## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SARAH FURMAN aka SARAH DRAGO | * | |
| | * | |
| **Plaintiff,** | * | **Civil Action No.** |
| | * | |
| **v.** | * | |
| | * | |
| U.S. SMALL BUSINESS ADMINISTRATION and | * | |
| KELLY LOEFFLER, in her Capacity as the | * | |
| Administrator of the U.S. SMALL BUSINESS | * | |
| ADMINISTRATION | * | |
| | * | |
| **Defendants.** | * | |

**************************************************

## COMPLAINT

Plaintiff Sarah Furman ("Furman"), files her Original Complaint, and in support thereof, would show the Court as follows:

### Jurisdiction and Venue

1.    Jurisdiction is premised upon 28 U.S.C. § 1346 and 5 U.S.C. §701, *et seq.*

2.    Venue is appropriate in the Eastern District of Louisiana under 28 U.S.C. §1391€(1)(B) and (C) because the Eastern District of Louisiana is the district where a substantial part of the events or omissions giving rise to the claim occurred, Plaintiff resides in the Eastern District of Louisiana and it is the location of the real Property connected to such claim.

1

**Parties**

3.  Plaintiff, Sarah Furman is an individual residing in Metairie, Louisiana.

4.  Defendant U.S. Small Business Administration ("SBA") is a governmental agency of the United States of America with a principal place of business located at 409 3rd Street S.W., Washington, D.C. 20416.   Defendant Kelly Loeffler, in her capacity as Administrator of the U.S. Small Business Administration, is the current Administrator for the SBA.   Defendants may be served by serving Kelly Loeffler at 409 3rd Street S.W., Washington, D.C. 20416.

**Background**

5.  This is a suit objecting to an administrative wage garnishment of Plaintiff's wages by the SBA and seeking judicial review of the SBA's December 29, 2025 Garnishment Hearing Decision which was a final agency decision for purposes of judicial review under the Administrative Procedure Act, 5 U.S.C. §701, *et seq.*

6.  On or about October 28, 2020, Hurricane Zeta struck the New Orleans area, causing damage to Furman's home at 1705 Fairfax Avenue, Metairie, LA 70003 (the "Property"), for which Plaintiff and her husband (hereinafter, the "Furmans") filed an insurance claim (Claim Number 10061352) against their insurance carrier, Louisiana Citizens Property Insurance Corporation ("Citizens").

7.  The Furmans and Citizens disagreed about the nature and scope of damage caused by the hurricane and negotiated accordingly, eventually resulting in Citizens making a payment of approximately $14,000.00 to repair the Furmans' roof.

2

8.    Less than one week after receiving such $14,000.00 payment, on August 29, 2021, Hurricane Ida struck the New Orleans area causing considerable damage, including but not limited to the Property.  The Furmans had yet to commence repairs to their roof caused by Hurricane Zeta.

9.    Once again, the Furmans filed a claim (Claim Number 10073198) against their Property insurer, Citizens, and once again, Citizens balked at making payment in the amount the Furmans showed was necessary to repair the damage.  As such, the Furmans were forced to sue Citizens for arbitrary and capricious failure to pay their valid claims.

10.   During the pendency of such litigation, the Furmans decided to borrow the funds necessary to repair the Property as their young children needed a safe place to live. Consequently, on or about November 23, 2021, Furman executed a Note as part of the Disaster Loan Program, in the amount of $54,000.00.  On or about January 19, 2023, Plaintiff executed a loan modification, increasing the amount of the loan to $231,600.00 (collectively, SBA Loan No. 1929149106).

11.   Plaintiff and her husband used such funds to repair the Property to its former condition prior to the hurricane.  Plaintiff paid the required loan payments accordingly.

12.   On August 20, 2024, Citizens issued a check in the amount of $62,615.80, made out to "M Furman & S Furman & Merlin Law & Wells Fargo Bank & US SBA & SEC HSNG – URBN DVLPMNT."  This check was meant to resolve Claim Number 10073198 (Hurricane Ida).

13.   Two days later, on August 22, 2024, Defendants received another check from Citizens in the amount of $12,384.20 for Claim Number 10061352 (Hurricane Zeta).  This check

was also made out to "M Furman & S Furman & Merlin Law & Wells Fargo Bank & US SBA & SEC HSNG – URBN DVLPMNT."

14. The Furmans' claims counsel at the time mailed both checks to Wells Fargo Bank, N.A., for endorsement and return. Relative to the first check ($62,615.80), counsel asked that it be returned to it so it could then be forwarded to the SBA and HUD for their respective endorsements. Instead, Wells Fargo returned the check to the Furmans. Relative to the second check ($12,384.20), Wells Fargo negotiated the same and applied it to the Furmans' escrow account, which had an approximate deficiency of the same amount, such that the Furmans expected the loan to be current.

15. For several months, the parties corresponded back and forth about the $62,615.80 check, which eventually led to said check becoming stale, requiring Citizens to re-issue another in the same amount; the Furmans received said replacement check on February 24, 2025.

16. Relative the $52,615.80 check – the primary driver of the within dispute - the Furmans requested that the SBA apply $50,092.64 to their principal loan balance, and the remaining $12,523.16 to be paid to the Furmans' Claims Counsel as its attorney fees.

17. The Furmans were able to resolve their mortgage issue with Wells Fargo and are presently in good standing therewith. But the SBA still has yet to negotiate the $62,615.80 check and remit $12,523.16 to Claims Counsel, as it was (and perhaps still is) the SBA's position that it was entitled to the entirety of the $62,615.80 proceeds and the Furmans' Claims Counsel is not entitled to be paid its agreed-upon contingency fee.

18. As the dispute over the $62,615.80 has proceeded, the SBA offset the Furmans' 2023 income tax refund in the approximate amount of $10,000.00. As such, the Furmans believed they were on track to amicable resolution with the SBA.

19. Nevertheless, on or about April 3, 2024, the SBA sent the Furmans a Notice of Intent to Initiate Administrative Wage Garnishment Proceedings. In response thereto, the Furmans submitted an Administrative Wage Garnishment Request for Hearing or Eligibility Determination on April 23, 2024.

20. Herein is the origin of the present dispute. The Furmans did not hear anything or receive any other information from the SBA until December 5, 2025 when they received another copy of the SBA's April 3, 2024 Notice of Intent to Initiate Administrative Wage Garnishment Proceedings letter. The Furmans believed that the dispute still centered around the $62,615.80 check and once the same was resolved, they would go back to normal debt payments to the SBA.

21. Instead, by letter dated December 29, 2025, the SBA issued a Garnishment Hearing Decision informing the Furmans of its decision to move forward with the Administrative Wage Garnishment pursuant to 13 C.F.R. §140.11. In such letter, the SBA states that it sent the Furmans an Acknowledgement of Request for Hearing Letter and set a deadline for the Furmans to submit supporting documentation by December 26, 2025. As the Furmans never received such Acknowledgement Letter, they did not submit any documents to support their position that the wage garnishment was not necessary or appropriate.

22. Specifically, and relevant hereto, the SBA found: "[T]o this date, you did not provide a written payment agreement with the Treasury or any documentation in support of

your objection to garnishment. . . . You have not established that the proposed garnishment would cause an unreasonable financial hardship for you at this time."

23. The decision of the SBA is:

    A.    arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;

    B.    without observance of procedure required by law; and

    C.    unsupported by substantial evidence.

24. The SBA's finding that the Administrative Wage Garnishment action may proceed, pursuant to 13 C.F.R. §140.11 should be set aside. Contrary to the SBA's finding, the Administrative Wage Garnishment action would in fact cause great harm to the Furmans and their family; it only resulted because of the SBA's intransigence relative to the $62,615.80 insurance proceeds; and the Furmans never had a meaningful opportunity to present their evidence and arguments in opposition to such Administrative Wage Garnishment.

WHEREFORE, Plaintiff seeks judicial review by this honorable Court, and the entry of a Judgment for the following relief;

1. Review the December 29, 2025 Wage Garnishment Decision of the SBA;

2. Set aside the SBA's findings and conclusions in the December 29, 2025 Wage Garnishment Decision;

3. Set aside the SBA's Administrative Wage Garnishment of Plaintiff's wages and all collection activities related to SBA Loan No. 1929149106; and

4. Grant Plaintiff such other and further relief wo which she is justly entitled.

DATED this 29th day of January 2026.              Respectfully submitted,

MICHAUD CONSUMER LAW, LLC

/s/ Marc R. Michaud
Marc R. Michaud, LA Bar No. 28962
1100 Poydras St., Ste. 2900
New Orleans, LA 70163
Telephone: (504) 910-6775
Facsimile: (504) 910-6953
marc@michaudconsumerlaw.com